UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

FINE PAINTS OF EUROPE, INC.,   :
   :
      Plaintiff,   :
   :
      v.   :  Case No. 2:08-cv-81
   :
ACADIA INSURANCE COMPANY,   :
   :
      Defendant.   :

## OPINION and ORDER

Fine Paints of Europe, Inc. ("Fine Paints") has brought a declaratory judgment action seeking a determination that Acadia Insurance Company ("Acadia"), its commercial general liability insurer, is obliged to defend and indemnify it in connection with a lawsuit brought by the State of Vermont for claims arising from the use of its product. In addition to the count seeking declaratory relief, Fine Paints has asserted claims for breach of contract, bad faith and violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451-2480n (2006). Fine Paints has moved for summary judgment on Count I of its complaint. Acadia has cross-moved for summary judgment on all counts. Jurisdiction is based on diversity of the parties.

### Background

The following facts are undisputed. Fine Paints sells imported paints at a retail outlet in Woodstock, Vermont. Acadia, an insurance company based in Westbrook, Maine, issued a commercial general liability ("CGL") policy to Fine Paints ("AI Policy") for the policy period from February 8, 2005 to February

8, 2006.  Subject to certain exclusions, the AI Policy provided

coverage to Fine Paints for "property damage" caused by an

"occurrence" during the period, and promised to defend its

insured against any suit seeking damages to which the insurance

applied.

On or about May 29, 2007 Fine Paints notified Acadia of a

potential claim under the AI Policy for paint failure at the

Justin Smith Morrill Homestead, a National Historic Landmark in

Strafford, Vermont.  In a letter dated June 4, 2007, Acadia

notified Fine Paints that "there may be some questions concerning

coverage," and enclosed a Non-Waiver Agreement, which both

parties executed.  (Doc. 16, Ex. B.)

In a letter dated June 19, 2007, Acadia declined coverage

under the AI Policy based on an exclusion for property damage to

Fine Paints' product.  It stated that it reserved the right to

raise additional coverage defenses that may be applicable.  (Doc.

13, Ex. 3.)

On January 25, 2008, the State of Vermont filed a complaint

in the Superior Court for Washington County against Fine Paints

and Ronald Wanamaker d/b/a Wanamaker Restoration (the "Underlying

Complaint").  The Underlying Complaint alleges that the State of

Vermont entered into a contract with Wanamaker to prepare and

paint the Morrill Homestead, also known as the Cottage.  It

alleges that Wanamaker purchased primer and topcoat paints from

Fine Paints and applied them to the Cottage.  It alleges that
Fine Paints expressly warranted that the primer and topcoat paint
would be free from manufacturing defects.

The Underlying Complaint further alleges that on September
6, 2005, Wanamaker observed poor topcoat paint adhesion.
Wanamaker contacted an agent of Fine Paints, who told Wanamaker
that the topcoat paint layer needed more time to cure.  On
January 12, 2006, and thereafter, the topcoat paint "exhibited
cracking, chipping, peeling, loss of adhesion, and separation
from the primer occurring on all exterior surfaces of the
Cottage." (Underlying Compl. ¶ 18 (Doc. 16, Ex. D).)  On March
10, 2006, the State notified Wanamaker of the paint failure, and
Wanamaker notified Fine Paints on May 15.

The Underlying Complaint asserts claims of breach of express
warranty and negligent misrepresentation against Fine Paints.  It
asserts that the State has incurred and will incur the costs of
stripping the primer and topcoat paint and reapplying both primer
and topcoat paint to all exterior surfaces of the Cottage, and it
seeks reimbursement for all damages resulting from the paint
failure.

By letter dated February 21, 2008, Acadia declined to defend
and indemnify Fine Paints in connection with the State's lawsuit
against it.  Among other reasons for denial of coverage, Acadia
stated that the claims set forth in the State's complaint did not

appear to fall under the policy's liability coverage because "[t]he claims do not allege 'property damage' as defined in the policy; [and t]he claims do not allege an 'occurrence,' as the term 'occurrence' is defined in the Policy." (Doc. 16, Ex. E at 3.) Acadia also stated that one or more exclusions to coverage contained in the AI Policy might apply, including, among others:

2. The exclusion for "property damage" to "your product" arising out of it or any part of it.
3. The exclusion for "property damage" to "impaired property" or property that has not been physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your product."

(Doc. 16, Ex. E at 4.)

Acadia sent another letter, dated April 2, 2008, further explaining its position, that the Underlying Complaint essentially alleged breach of contract, which was not covered by a liability policy; that the paint failure did not constitute an occurrence under the terms of the policy; that the CGL policy does not provide coverage for claims which are solely claims of defective materials; that the Underlying Complaint does not allege property damage as defined by the policy; and that claims arising out of the insured's product when the claim seeks replacement or repair of damages to the product itself were excluded from coverage. (Doc. 13, Ex. 4.)

This lawsuit followed.

## Discussion

## I.    Summary Judgment Standard

Summary judgment is "'warranted upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 455 (2d Cir. 2007) (quoting *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)); Fed. R. Civ. P. 56(c).  "In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the moving party." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir. 2006).  "When parties have filed cross-motions for summary judgment, the court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Bronx Household of Faith v. Bd. of Educ. of City of New York*, 492 F.3d 89, 96-97 (2d Cir. 2007) (quoting *Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002)).

## II.    The AI Policy

The AI Policy covers "property damage" caused by an "occurrence" within the policy period, as long as the damage is not excluded from coverage under the terms of the policy.  (AI Policy 93-97 (Doc. 13, Ex. 1).)  "Property damage" is defined as

"[p]hysical injury to tangible property, including all resulting loss of use of that property . . .; or . . . [l]oss of use of tangible property that is not physically injured."  (AI Policy 107.)  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (AI Policy 106.)

The policy contains the following exclusions, among others:

2.   Exclusions

This insurance does not apply to:

*     *     *
k.   Damage To Your Product
     "Property damage" to "your product" arising
     out of it or any part of it.
*     *     *
m.   Damage to Impaired Property Or Property Not
     Physically Injured
     "Property damage" to "impaired property" or
     property that has not been physically
     injured, arising out of:
     (1)  A defect, deficiency, inadequacy or
          dangerous condition in "your product" or
          "your work"; or
     (2)  A delay or failure by you or anyone
          acting on your behalf to perform a
          contract or agreement in accordance with
          its terms.
     This exclusion does not apply to the loss of
     use of other property arising out of sudden
     and accidental physical injury to "your
     product" or "your work" after it has been put
     to its intended use.

(AI Policy 94-97.)  "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by . . . [y]ou," and "[i]ncludes . . . warranties or representations made at any time with respect to

the fitness, quality, durability, performance or use of 'your

product.'"  (AI Policy 107-08.)  "Impaired property" is defined

as

> tangible property, other than "your product" or "your
> work", that cannot be used or is less useful because .
> . . [i]t incorporates "your product" or "your work"
> that is known or thought to be defective, deficient,
> inadequate or dangerous . . . if such property can be
> restored to use by . . . [t]he repair, replacement,
> adjustment or removal of "your product" or "your work."

(AI Policy 105.)

## III. Duty to Defend and Indemnify[1]

An insurer's duty to defend is broader than its duty to

indemnify, and is triggered if it appears that the policy might

potentially cover that type of claim.  *Hardwick Recycling &*

*Salvage, Inc. v. Acadia Ins. Co.*, 869 A.2d 82, 87 (Vt. 2004)

(citing *City of Burlington v. Nat'l Union Fire Ins. Co.*, 655 A.2d

719, 721 (Vt. 1994)); *Garneau v. Curtis & Bedell, Inc.*, 610 A.2d

132, 134 (Vt. 1992)).  Only where there is, as a matter of law,

no duty to indemnify will there be no duty to defend.  *Id.*

The insurer's duty to defend is determined by comparing the

allegations in the underlying complaint to the terms of the

policy.  *Id.* at 133.  If necessary, a court may examine the

"known facts underlying a plaintiff's complaint to understand the

---

[1]  This Court, sitting in diversity, applies the substantive law
of the state of Vermont to this dispute.  *See British Int'l Ins.
Co. v. Seguros La Republica, S.A.*, 342 F.3d 78, 81 (2d Cir. 2003)
(applying law of forum state in diversity case in absence of
disagreement, without conducting choice of law analysis).

application of policy provisions or exclusions." *Id.* at 134; *see also Blake v. Nationwide Ins. Co.*, 904 A.2d 1071, 1076 (Vt. 2006) (relevant policy exclusions involved factual questions not covered in complaint).

The policy will be construed "according to its terms and the evident intent of the parties as expressed in the policy language," *City of Burlington*, 655 A.2d at 721, "to avoid binding insurers to coverage that the parties did not reasonably contemplate." *State Farm Mut. Auto. Ins. Co. v. Roberts*, 697 A.2d 667, 672 (Vt. 1997). Disputed terms receive "their plain, ordinary, and popular meaning," *Hardwick Recycling*, 869 A.2d at 90, with any ambiguities resolved in favor of the insured. *Garneau*, 610 A.2d at 134. To prevail, the insurer must "show that a third party's claim against the insured is entirely excluded from coverage." *State v. CNA Ins. Cos.*, 779 A.2d 662, 667 (Vt. 2001).

In its motion, Acadia argues that the AI Policy does not cover the claims alleged by the State against Fine Paints on four grounds: 1) because the Underlying Complaint alleges no property damage other than to Fine Paints' product, the paint; 2) because the claims do not allege damage caused by an occurrence, as defined by the AI Policy; 3) because the claims in the underlying action are excluded from coverage under the "your product" exclusion; and 4) because the claims in the underlying action are

8

excluded from coverage under the "impaired property" exclusion.

**A.    Property Damage**

The AI Policy provides coverage for "'property damage' to which this insurance applies." (AI Policy 93.) "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . .; or . . . [l]oss of use of tangible property that is not physically injured." (AI Policy 107.) The policy excludes coverage for claims of property damage to the insured's own product. (AI Policy 97.)

Acadia argues that the Underlying Complaint does not allege any property damage as that term is defined in the policy, because the State claims no physical injury to tangible property or loss of use of that property, other than to Fine Paints' product.[2]

Apparently conceding that the Underlying Complaint does not specifically claim physical injury to the Cottage, Fine Paints contends that the known facts nevertheless demonstrate that the State alleges physical injury to the Cottage. It argues that application of the wrong type of paint physically and materially altered the Cottage's exterior wood, resulting in a detriment to the State, using a definition of physical injury derived from a

---

[2]  Fine Paints agrees that the Underlying Complaint does not allege loss of use of the Cottage. (Fine Paints Reply Mem. 7 (Doc. 18).)

Montana Supreme Court decision, *Swank Enterprises, Inc. v. All Purpose Services, Ltd.*, 154 P.3d 52 (Mont. 2007).

*Swank* involved a suit for using improper paint on filter tanks and pipes during construction of a water treatment plant. The treatment plant's tanks and pipes were stripped and repainted and the treatment plant was shut down for the duration of the repair work. The Court held that the term "physical injury" for purposes of CGL coverage meant "a physical and material alteration resulting in a detriment," specifically that the pipes and tanks had to be stripped and repainted. *Id.* at 56. The Court concluded therefore that application of improper paint to the treatment center's pipes and tanks constituted property damage. *Id.; see also Pittsburgh Plate Glass Co. v. Fid. & Cas. Co. of N.Y.*, 281 F.2d 538, 541 (3d Cir. 1960) (paint applied to outside venetian blinds became part of the finished product, and "any damage to the finished product, such as flaking or peeling of the paint, is property damage," applying Pennsylvania law).

Other jurisdictions employ a similarly commonsense construction of "property damage." *See, e.g., Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E. 2d 481, 496 (Ill. 2001) ("[T]angible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension."); *Webster v. Acadia Ins. Co.*, 934 A.2d 567, 571 (N.H. 2007) ("'[P]roperty suffers physical, tangible injury

when the property is altered in appearance, shape, color or in some other material dimension.'") (quoting 9A Steven Plitt et al., *Couch on Insurance* § 129:6 (3d ed. 1995)).

Vermont case law interpreting property damage in the context of a CGL policy is sparse; the Vermont Supreme Court's recent discussion of the term in *Down Under Masonry, Inc. v. Peerless Ins. Co.*, 950 A.2d 1213 (Vt. 2008) (mem.), may instruct by negative implication. In *Down Under Masonry*, the Court considered whether "property damage" covered a contractor's installation of inferior cedar roof shingles. It concluded that "[n]either 'physical injury' nor 'loss of use' occurred" because there was no evidence of physical defect in the shingle material or in the manner in which the shingles were installed, nor did the installation result in any loss of use of the structure. *Id.* at 1216; *see also J.Z.G. Res., Inc. v. King*, 987 F.2d 98, 101 (2d Cir. 1993) (improperly sited and graded roads did not sustain physical injury for purposes of CGL coverage, applying New York law).

By contrast here, it is reasonable to infer from the allegations of the Underlying Complaint that the State may seek to prove a physical defect in the paint used on the Cottage which caused the topcoat to crack, peel and separate from the primer. A claim based on defective paint that was applied to the exterior of the Cottage and materially altered the appearance of the

property by cracking, peeling and separating comes within the insuring agreement's definition of property damage.

Moreover, the Underlying Complaint seeks to recover for all damages associated with the paint failure. Because it is possible that the State may produce evidence of additional property damage to the Cottage as the result of the paint failure, Acadia has not shown that it is entitled to summary judgment on the ground that the claim against Fine Paints has no potential to assert property damage.

### B. Occurrence

Next, Acadia argues that the Underlying Complaint does not allege an "occurrence." The AI Policy covers property damage that is caused by an occurrence, defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (AI Policy 106.) The Vermont Supreme Court has ruled that "accident" is not ambiguous, and is given its plain meaning. *See Serecky v. Nat'l Grange Mut. Ins.*, 857 A.2d 775, 781 (Vt. 2004). An accident "is an event that is undesigned and unforeseen, . . . an unexpected happening." *Northern Sec. Ins. Co. v. Perron*, 777 A.2d 151, 156 (Vt. 2001) (internal quotation marks and citations omitted); *accord Serecky*, 857 A.2d at 781; *see also City of Burlington*, 655 A.2d at 721 ("accident" is "'an unexpected happening without intention and design.'") (quoting *Commercial Union Ins. Co. v. City of*

*Montpelier*, 353 A.2d 344, 346 (Vt. 1976)).  Thus, "if coverage [is] sought because of an accident that resulted in injury that was neither expected nor intended, there [is] an 'occurrence' and, consequently, there could be coverage."  *Serecky*, 857 A.2d at 782.

A CGL policy may cover an intentional act that results in unintended injury.  *See Northern Sec.*, 777 A.2d at 158; *see also CNA Ins. Cos.*, 779 A.2d at 670 ("The unexpected nature of an accident describes the harm that is caused, rather than the act involved."); *accord Vill. of Morrisville Water & Light Dep't v. U.S. Fid. & Guar. Co.*, 775 F. Supp. 718, 729-30 (D. Vt. 1991).  The relevant inquiry is not whether Fine Paints breached a contract or warranty, but whether Fine Paints by its actions expected or intended the harm to the Cottage.  *See CNA Ins. Cos.*, 779 A.2d at 670 (relevant inquiry is not whether the act was intentional, but rather whether the harm that resulted from the act was expected or intended).  There is no dispute that Fine Paints did not intend this injury.  The paint failure at the Cottage constitutes an "occurrence" under Vermont law.

## C.  Damage to Your Product

The AI Policy contains several "business risk" exclusions, intended to preclude coverage for losses which occur because of faulty products or workmanship.  *See, e.g.*, *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 791 (N.J. 1979); 9A Steven Plitt et

13

al., *Couch on Insurance* § 129:16 (3d ed. 1995 & Supp. 2008); *see also Garneau*, 610 A.2d at 134 (discussing purpose of work product exclusion).  The AI Policy excludes coverage for "'property damage' to 'your product' arising out of it or any part of it." (AI Policy 97.)  This language has been interpreted to "'exclude[] damages sought for the cost of repairing or replacing the insured's own . . . product.'"  *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 472 F.3d 99, 119 (4th Cir. 2006) (applying North Carolina law, quoting *W. World Ins. Co. v. Carrington*, 369 S.E. 2d 128, 130 (N.C. 1988)); *see also Auto Owners Ins. Co. v. Travelers Cas. & Surety Co.*, 227 F. Supp. 2d 1248, 1263-64 (M.D. Fla. 2002) (CGL policies provide coverage for property damage caused by the product, but not for replacement and repair of the product, applying Florida law); *West Am. Ins. Co. v. Lindepuu*, 128 F. Supp. 2d 220, 229 (E.D. Pa. 2000) (finding exclusions precluded coverage for cost of replacing defective windows and doors, applying Pennsylvania law); *Peterson v. Dakota Molding, Inc.*, 738 N.W. 2d 501, 508 (N.D. 2007) ("your product" exclusion precluded coverage for damages flowing from malfunctioning funnels, applying North Dakota law).

There is no reason to believe that the Vermont Supreme Court would interpret the "your product" exclusion any differently. *See Garneau*, 610 A.2d at 134-35 (interpreting work product

14

exclusion to preclude coverage for purely economic loss based on faulty workmanship).  To the extent that the State seeks only to recover the cost of replacing the defective paint, Acadia will not be required to indemnify Fine Paints.  This conclusion is consistent with the purpose of a CGL policy, which is not intended to shield an insured from economic losses stemming from its faulty product.  *See id.* at 134; *Weedo*, 405 A.2d at 791.

It does not appear to a legal certainty at this point however that Fine Paints could only be liable for the cost of replacement, given the broad damages request in the Underlying Complaint.  *See* Underlying Compl. 9.  Given that the Underlying Complaint potentially includes claims for damages to the exterior wood of the Cottage itself, Acadia has not shown that it is entitled to summary judgment on Count I of Fine Paints' Complaint.  Because Fine Paints has shown that the State's claims against it might potentially include damage to the Cottage itself, Acadia has a duty to defend Fine Paints in the Underlying Complaint.

### D.  Damage to Impaired Property

The "impaired property" exclusion states that "[t]his insurance does not apply to . . . '[p]roperty damage' to 'impaired property' . . . arising out of . . . [a] defect, deficiency, inadequacy or dangerous condition in 'your product'

or 'your work.'"  (AI Policy 94, 97.)[3]  "Impaired property" is

defined as "tangible property, other than 'your product' . . .

that cannot be used or is less useful because . . . [i]t

incorporates 'your product' . . . that is known or thought to be

defective, deficient, inadequate or dangerous . . . if such

property can be restored to use by . . . [t]he repair,

replacement, adjustment or removal of 'your product.'"  (AI

Policy 105.)

The Underlying Complaint alleges property damage arising out

of a defect or deficiency in Fine Paints' product.  Fine Paints

argues that the "impaired property" exclusion does not apply

because the Underlying Complaint does not allege loss of use.  In

its reply memorandum Acadia agrees and does not press the

applicability of this exclusion.

## IV.  Breach of Contract & Bad Faith

Fine Paints has alleged that Acadia breached its contract by

refusing to defend and indemnify it in connection with the

State's claim.  Because Acadia has a duty to defend Fine Paints,

it is not entitled to summary judgment on the breach of contract

---

[3]  According to the AI Policy, "[t]his exclusion does not apply
to the loss of use of other property arising out of sudden and
accidental physical injury to 'your product' or 'your work' after
it has been put to its intended use."  (AI Policy 97.)  Given
that the Underlying Complaint does not allege loss of use in
connection with the Cottage, the parties do not contend that the
exception to the "impaired property" exclusion is implicated in
this case.

claim (Count II).

For an insured to establish a claim of bad faith against its insurer it "must show that (1) the insurer had no reasonable basis to deny the insured the benefits of the policy, and (2) the company knew or recklessly disregarded the fact that it had no reasonable basis for denying the insured's claim." *Peerless Ins. Co. v. Frederick*, 869 A.2d 112, 116 (Vt. 2004). If the claim is "fairly debatable," then the insurer will not be found liable. *Bushey v. Allstate Ins. Co.*, 670 A.2d 807, 809 (Vt. 1995).

Here there were substantial and genuine questions concerning whether the State's claim triggered a duty to defend, and there remains a real possibility that Acadia will not be obliged to indemnify Fine Paints. Acadia's refusal to defend and indemnify was reasonable, because the claim was fairly debatable. *See id.* at 810. Acadia is entitled to summary judgment on Count III of the Complaint.

## V.  Consumer Fraud

Fine Paints also alleges that Acadia has violated Vermont's Consumer Fraud Act. The Vermont Supreme Court has not explicitly decided, since the Act was broadened in 1985, whether the Consumer Fraud Act applies to insurance transactions. Assuming that the amended Act does apply to insurance transactions, Acadia is nonetheless entitled to summary judgment.

For Fine Paints to recover under the Consumer Fraud Act,

"'(1) there must be a representation, practice, or omission likely to mislead the consumer; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision with regard to a product.'" *Greene v. Stevens Gas Serv.*, 858 A.2d 238, 244 (Vt. 2004) (quoting *Peabody v. P.J.'s Auto Vill., Inc.*, 569 A.2d 460, 462 (Vt. 1989)). Fine Paints and Acadia are engaged in a coverage dispute; "a mere coverage dispute is insufficient to show consumer fraud." *Id.*

Fine Paints argues that Acadia's agreement to provide CGL coverage and to defend and indemnify it against claims had the tendency to deceive a reasonable consumer, who would have expected its CGL carrier to defend and indemnify the paint failure claim. "Under that logic, any denial of coverage becomes consumer fraud." *Id.* It is precisely such a "fairly debatable" coverage dispute that is not actionable as consumer fraud. Acadia is entitled to summary judgment on Count IV of the Complaint.

## Conclusion

For the above-stated reasons, Fine Paints' Motion for Summary Judgment (Doc. 13) is **granted in part and denied in part.** Acadia's Cross-Motion for Summary Judgment (Doc. 16) is **granted in part and denied in part**.

18

Acadia's duty to defend is triggered because the State's claim against Fine Paints involves property damage to the Cottage and may potentially seek reimbursement for costs beyond the mere replacement of the defective paint. Fine Paints' motion for summary judgment on Count I is therefore granted in part and denied in part as premature; the motion is granted as to the duty to defend, and denied without prejudice as to the duty to indemnify.

Acadia's motion for summary judgment is denied as to Counts I and II and granted as to Counts III and IV.


Dated at Burlington, Vermont this 24th day of March, 2009.


<u>/s/ William K. Sessions III</u>
William K. Sessions III
Chief Judge